**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| ANGELA DWYER et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 3:16-cv-03262 |
| | ) | Judge Aleta A. Trauger |
| SOUTHWEST AIRLINES CO., | ) | |
| | ) | **LEAD CASE** |
| Defendant. | ) | |

***CONSOLIDATED WITH:***

| | | |
|---|---|---|
| MELISSA WARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:17-cv-00286 |
| | ) | Judge Aleta A. Trauger |
| SOUTHWEST AIRLINES CO., | ) | |
| | ) | **MEMBER CASE** |
| Defendant. | ) | |

| | | |
|---|---|---|
| MELISSA WARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:17-cv-00842 |
| | ) | Judge Aleta A. Trauger |
| UNITED STATES OF AMERICA, | ) | |
| | ) | **MEMBER CASE** |
| Defendant. | ) | |

ANGELA DWYER et al.,                    )
                                        )
        Plaintiffs,                     )
                                        )
v.                                      )    Case No. 3:17-cv-01219
                                        )    Judge Aleta A. Trauger
UNITED STATES OF AMERICA,               )
                                        )    LEAD CASE
        Defendant.                      )

_____

MELISSA WARD as Parent and Next Friend  )
of RONALD TILLMAN and GREYSON           )
OWENS, her minor children,              )
                                        )
        Plaintiff,                      )    Case No. 3:18-cv-00352
                                        )    Judge Aleta A. Trauger
v.                                      )
                                        )    MEMBER CASE
SOUTHWEST AIRLINES CO. and              )
UNITED STATES OF AMERICA,               )
                                        )
        Defendants.                     )

_____

VANESSA JACKSON,                        )
                                        )
        Plaintiff,                      )
                                        )
v.                                      )    Case No. 3:18-cv-01343
                                        )    Judge Aleta A. Trauger
SOUTHWEST AIRLINES CO. and              )
UNITED STATES OF AMERICA,               )    MEMBER CASE
                                        )
        Defendants.                     )

## MEMORANDUM and ORDER

Before the court is plaintiff Vanessa Jackson's Motion to Amend Complaint (Doc. No. 99).

Jackson seeks to amend her Complaint under Rule 15(a)(2) of the Federal Rules of Civil Procedure.

Southwest Airlines Co. and the United States of America both oppose the proposed additional

damages claim on the grounds that it is futile. (Doc. Nos. 103, 104.) For the reasons set forth herein, the court will deny that portion of the Motion to Amend on the grounds of futility. The court will grant as unopposed the plaintiff's request to remove a claim for one category of damages.

## I.     Background

Vanessa Jackson filed her original Complaint in this action on December 4, 2018. In February 2019, this case was consolidated with the case *Angelina Dwyer et al. v. Southwest Airlines Co.*, Case No. 3:16-cv-03262, which had previously been consolidated with four other member cases. The consolidated cases all arise from the same December 15, 2015 aviation incident at Nashville International Airport that occurred when an aircraft operated by Southwest Airlines Co. ("Southwest") departed a taxiway. The plaintiffs in the consolidated cases were all passengers on the aircraft at the time the incident occurred, and they allegedly suffered personal injuries as a result of it.

Jackson amended her Complaint in March 2019, with the consent of the defendants, to substitute the United States as a defendant in the place of the United States Federal Aviation Administration. (*See* Doc. Nos. 87–89.) She filed her present motion within the deadline set forth in the operative Case Management Order for amending the pleadings. In her motion, she seeks permission to add a claim for damages in the form of the loss of household services and to remove her claim for damages in the form of future loss of earning capacity. The United States does not oppose the removal of the claim for damages associated with the loss of future earning capacity. However, it opposes the addition of the new claim for damages on the grounds that it would be futile, because "Tennessee law does not permit a plaintiff to seek personal injury damages for loss of value of past and future household services outside of the context of a loss of consortium claim." (Doc. No. 103, at 3.) Southwest's Response simply "adopts and incorporates by reference" the

United States' Response. (Doc. No. 104, at 1.) The plaintiff filed a Reply, arguing that there is no available Tennessee precedent excluding damages for loss of the value of household services. (Doc. No. 105.)

## II.      Standard of Review

Federal Rule of Civil Procedure 15(a)(1) provides that a party can amend its pleading once "as a matter of course" under limited circumstances. Rule 15(a)(2) applies "[i]n all other cases," and it provides that a party may amend "only with the opposing party's written consent or the court's leave." Such leave should be freely given "when justice so requires." *Id.* Rule 15(a)(2) "embodies a 'liberal amendment policy.'" *Brown v. Chapman*, 814 F.3d 436, 442–43 (6th Cir. 2016) (citation omitted).

To determine whether to grant leave under this liberal policy, courts weigh several factors, including "[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458–59 (6th Cir. 2001) (citation omitted). Generally, futility provides an independent basis for dismissal when any claims sought to be added "could not survive a motion to dismiss." *Midkiff v. Adams Cty. Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005).

## III.      The Plaintiff's Motion

The change sought in the proposed amendment is slight and, on its face, relatively innocuous. In the original Complaint and First Amended Complaint, Jackson identified the damages she seeks to recover in this action as follows:

> 43. Plaintiff has suffered, and will continue to suffer, the following types of harm, for which she is entitled to damages from Defendants:
>
> > a. Past and future medical expenses;

b. Future loss of earning capacity;

c. Past and future pain and suffering;

d. Permanent physical impairment;

e. Past and future emotional distress; and

f. Loss of enjoyment of life.

(Doc. No. 89 ¶ 43.) The enumerated list of categories of damages in her proposed Second Amended Complaint is identical, except that it omits the category "Future loss of earning capacity" and adds "Loss of the value of past and future household services." (Doc. No. 99-1 ¶ 43.)

In the Memorandum in Support of her Motion, Jackson explains that, as a result of the injuries suffered in the aviation incident, she "has been limited in her ability to perform various household tasks, and has to rely on friends and family to complete those tasks for her." (Doc. No. 100, at 3.) Her retained expert has valued her past and future loss of household services at $196,000. (*Id.*) She anticipates that the defendants will argue that this category of damages is only recoverable by a spouse or family member, not the person injured. She argues, to the contrary, that "[t]here is no Tennessee law to support" the defendants' position and that the two cases on which she expects the defendants to rely do not support the proposition that a plaintiff cannot recover for the loss of household services on her own behalf. (Doc. No. 100, at 3–4 (citing *Cone v. Hankook Tire Co., Ltd.*, No. 14-1122, 2017 WL 401795, at *3 (W.D. Tenn. Jan. 25, 2017); *Spears v. Cooper*, No. 1:07-CV-58, 2008 WL 5552336 (E.D. Tenn. Nov. 17, 2008)).) The plaintiff argues generally that (1) neither case ruled out the possibility of the type of damages she seeks; (2) neither of these cases is binding on this court, as they both attempt to predict what Tennessee courts would say in an area in which there is little, if any, caselaw; and (3) in the absence of clear authority to the contrary, the court should permit the finder of fact to consider damages actually suffered by Jackson.

The defendants, indeed, rely upon *Cone* and *Spears*, arguing that all available law—sparse as it is—indicates that damages for the loss of the value of household services are not compensable under Tennessee law outside the loss-of-consortium context and, therefore, that amending the complaint to add this category of damages would be futile. They also refer to the Tennessee Pattern Jury Instructions, which make no reference to the loss of household services as a category of damages recoverable by a plaintiff injured in tort, while expressly contemplating the recovery of such damages by the spouse of an injured person. The defendants further contend that there is "no reason why, under her current complaint, Jackson may not recover [as an element of compensatory damages] the cost of past and future preplacement household services necessitated by her alleged physical impairment if she adduces admissible evidence at trial . . . that she has actually incurred and will incur such expenses as a result of the airplane accident." (Doc. No. 103, at 6.) Thus, the defendants argue, permitting the category of damages sought by the plaintiff would potentially give rise to duplicative recovery.

In her Reply, Jackson contends that the damages she seeks would not be duplicative and argues again that, in the absence of legal authority excluding the damages she seeks, their validity should be left to the finder of fact. (Doc. No. 105.)

## IV.    Discussion

The court finds the defendants' arguments persuasive. Contrary to the plaintiff's position, the single best argument against her ability to recover damages for the loss of her own household services is that she cannot point to any Tennessee law authorizing the recovery of such damages, despite the existence of a substantial body of Tennessee caselaw addressing the types of damages that *are* available to tort plaintiffs, as discussed below. That caselaw expressly authorizes damages of the type the plaintiff seeks *only* in the context of loss of consortium claims brought by the spouse

of an injured party. Authority from outside Tennessee, including the federal district courts the parties cite, tends to support the conclusion that the damages the plaintiff seeks are not recoverable by her.

### A. Tennessee Law on Tort Damages

The Tennessee Pattern Jury Instructions identify several categories of compensatory damages available under Tennessee law in tort cases. These include, among others, "pain and suffering," "permanent injury," and "loss of enjoyment of life." Tenn. Pattern J. Instr. – Civil § 14.01. Damages for pain and suffering provide "reasonable compensation for any physical pain and discomfort and for mental pain and discomfort suffered by the plaintiff," past and future. *Id.* "Mental discomfort includes anguish, grief, shame, or worry." *Id.* Permanent injury is defined as "an injury that the plaintiff must live with for the rest of the plaintiff's life that may result in inconvenience or the loss of physical vigor." Damages for permanent injury may be awarded, even if the permanent injury does not cause such pain or inconvenience. *Id.* Likewise, loss of enjoyment of life permits damages that "take[] into account the loss of the normal enjoyments and pleasures in life in the future as well as limitations on the person's lifestyle resulting from the injury." *Id.*

The pattern jury instructions do not have the force of law but are "merely patterns or suggestions." *State v. Hodges*, 944 S.W.2d 346, 354 (Tenn. 1997). These instructions, however, clearly reflect the current state of Tennessee law. *See, e.g.*, *Palanki ex rel. Palanki v. Vanderbilt Univ.*, 215 S.W.3d 380, 388 (Tenn. Ct. App. 2006); *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 703 (Tenn. Ct. App. 1999) (from which the pattern instruction seems derived).

The Tennessee courts recognize that

[t]he purpose of tort damages in Anglo-American law is to compensate the wronged party for damage or injury caused by the defendant's conduct. The goal of awarding damages is to repair the wronged party's injury or, at least, to make the wronged party whole as nearly as may be done by an award of money.

*Overstreet*, 4 S.W.3d at 703 (citations omitted). To achieve that goal, a plaintiff may be awarded compensatory damages "for any economic or pecuniary losses that naturally result from the defendant's wrongful conduct," as well as "compensatory damages for non-economic loss or injury." *Meals ex rel. Meals v. Ford Motor Co.*, 417 S.W.3d 414, 419, 420 (Tenn. 2013) (citations omitted); *Dedmon v. Steelman*, 535 S.W.3d 431, 438 (Tenn. 2017). The Tennessee Supreme Court has expressly recognized, consistent with the categories of damages listed in the pattern instruction, that recoverable "[n]on-economic damages include pain and suffering, permanent impairment and/or disfigurement, and loss of enjoyment of life." *Dedmon*, 535 S.W.3d at 438 (quoting *Meals*, 417 F.3d at 420).

In other words, the Tennessee courts have not recognized a plaintiff's loss of the value of her own household services as a category of recoverable non-economic damages. As a result, the plaintiff simply cannot establish that she is entitled to recover this type of damages. However, if the plaintiff proves that, as a result of her injuries, she has been, or will be (for instance, when her friends and family members tire of helping her), required to *pay* for services she previously provided for herself, including such services as lawn and yard work, cooking, housecleaning, and so forth, Tennessee law contemplates that she will be able to recover for these expenditures as a part of her economic damages.

In addition, depending upon her injuries and the available proof, the plaintiff may be able to establish, as part of her non-economic damages for loss of enjoyment of life, that she should be compensated for her inability to engage in activities she previously enjoyed, including such things as cooking or gardening. *See Overstreet*, 4 S.W.3d at 716 (citing approvingly cases awarding damages related to the loss of "normal enjoyments of life," including "recreational or family activities," "going on a first date, becoming a parent, reading, debating politics"); *see id.* at 717

(noting that the evidence supported the jury award for loss of enjoyment of life, where the plaintiff could not, among other things "do much of her housework without assistance" and that she "sometimes burns herself when she cooks"). Further, if the plaintiff proves that she suffers from a permanent injury, that category of damages is defined by the courts to include "inconvenience." *See, e.g.*, *Overstreet*, 4 S.W.3d at 715. It appears to be broad enough to encompass, for example, the inconvenience of having to devote two hours to perform a task that previously took only one, as a result of the permanent injury. Thus, although the plaintiff cannot recover for the loss of the value of her own household services, some components of that type of damages are recoverable under damages categories already recognized by Tennessee law.

The conclusion that Tennessee law does not authorize the injured plaintiff to recover damages for the loss of her own household services is bolstered by the fact that Tennessee law expressly authorizes the recovery of the loss of the value of household services by the spouse of an injured plaintiff within the context of a loss of consortium claim. The Tennessee Pattern Jury Instructions provide that the spouse of an individual who suffered an injury may sue to recover, in addition to other damages, "[t]he reasonable value of the injured spouse's services this plaintiff has lost [and the present cash value of such services plaintiff is reasonably certain to lose in the future]." Tenn. Pattern J. Instr. – Civil § 14.20 ("Personal Injury – Spouse"); *see also Jackson v. Miller*, 776 S.W.2d 115, 117 (Tenn. Ct. App. 1989) ("[L]oss of consortium is a right of action separate from that of the husband for his damage[;] loss of services is a part of the loss of consortium. . . ." (quoting *Manning v. Altec, Inc.*, 488 F.2d 127, 132 (6th Cir. 1973)).

A spouse's action for loss of consortium is a "distinct cause of action" created by statute. *Clark v. Shoaf*, 209 S.W.3d 59, 61 (Tenn. Ct. App. 2006) (citing Tenn. Code Ann. § 25-1-106). Largely for that reason, the Tennessee Supreme Court declined to create a common-law cause of

action for loss of parental consortium in personal injury cases, one that would have allowed the minor children of an injured parent to be compensated for the loss of consortium and services previously provided by the injured parent. *Taylor v. Beard*, 104 S.W.3d 507 (Tenn. 2003). The court held that, due to its "limited role in declaring public policy" and the fact that the Tennessee legislature had already involved itself extensively in this arena, "the issue of whether to create such a cause of action is a matter of legislative discretion." *Id.* at 511–12; *see id.* at 511 ("*[T]he legislature has . . . thoroughly occupied itself in the area of the family by determining the availability of actions for loss of consortium for both spouses. Where the legislature has thoroughly involved itself in an area of the law and where its decisions in that area appear to set discreet boundaries, we think that it should be left to the legislature to change those boundaries, if they are to be changed, and to define the new ones.*" (emphasis in original; quoting *Norwest v. Presbyterian Intercommunity Hosp.*, 631 P.2d 1377, 1380 (Or. Ct. App. 1981)).

The Tennessee Supreme Court's refusal to extend loss of consortium causes of action to other close family members—leaving the matter to the discretion of the legislature—strongly weighs against this court's permitting the type of damages the plaintiff seeks here. If these damages were permissible under Tennessee law, the courts or the legislature would have so recognized.

### B.  Other Courts' Treatment of Tennessee Law

The cases cited by the parties, as the plaintiff argues, are not binding on this court, nor are they particularly persuasive. The first is largely irrelevant, as it concerned a motion *in limine* in a wrongful death action, in which the defendant sought to exclude expert testimony from the plaintiff's accountant on the value of the loss of the decedent's household services. The defendant argued that, because the decedent was single, he "would be the primary recipient of his own household services—and thus household services would not be a component of economic loss

associated with his death." *Spears v. Cooper*, No. 1:07-CV-58, 2008 WL 5552336, at *7 (E.D. Tenn. Nov. 17, 2008). The court noted that it was "unclear from the parties' filings whether this dispute in calculation is a purely doctrinal one, or involves an underlying factual dispute as to [the decedent's] living situation—either as his living situation was at the time of his death or how that situation would have been had he survived." *Id.* Regardless, because the defendant's arguments did not address the reliability of the accountant's calculations, the court denied the motion without any discussion of the "doctrinal" aspects of the dispute. *Id.*

In *Cone v. Hankook*, No. 14-1122, 2017 WL 401795 (W.D. Tenn. Jan. 25, 2017), the defendant sought partial summary judgment in its favor as to some of the damages sought by the plaintiff. The plaintiff had been severely injured in a vehicular incident that he alleged was caused by a defect in a tire manufactured by the defendant. He suffered permanent traumatic brain and spinal cord injuries. He sought to recover, among other categories of damages, the "loss of household services to himself." *Id.* at *3. The plaintiff's economist described these losses as "represent[ing] the value of replacing the previously uncompensated activities necessary for daily life" and defined the services as including "household chores, shopping, fixing things, etc." *Id.* The plaintiff, however, had also submitted a "life care plan" that included "the cost of having another person provide twenty-four hour in-home care." *Id.* The defendant objected only that allowing the plaintiff to recover both types of damages would be duplicative. The plaintiff argued that the two categories did not overlap:

> Dr. Carter testified that a life care plan measures the costs that will be incurred to maintain Frazier in a "subsistent state." In contrast, he said that household services related to things that he could previously do for himself but was no longer capable of completing due to his injuries, such as preparing food and cleaning up. According to Dr. Carter, the ability to complete those tasks had a value, which was represented in the loss of household services. He opined that having a caregiver prepare food for Frazier was not a substitute for the loss of his ability to perform that activity himself.

*Id.* (citations to the record omitted).

In other words, the plaintiff in *Cone* was seeking precisely the same type of damages the plaintiff here apparently seeks. The court, with little analysis, granted the defendant's motion for summary judgment as to those damages, finding both that Tennessee caselaw did not appear to support this type of damages and that they would be duplicative:

> The Court has not found, and Plaintiffs have not cited, any cases where damages for loss of household services were awarded to an injured person. Rather, case law shows that they are typically awarded to a spouse where the injured person or decedent will no longer be able to provide household services[;] thus, the spouse is compensated for that loss. In the present case, Plaintiffs are seeking compensation for the loss of household services to Frazier himself. But, as Hankook points out, damages in his life care plan provide for the cost of someone to cook, clean, and perform other household chores. In other words, the tasks that he can no longer complete for himself will now be performed by another person, the cost of which is included in the life care plan. The Court agrees that allowing him to recover for both the loss of household services to himself as well as expenses in his life care plan for another person to provide twenty-four hour care would be duplicative and improper.

*Id.* at *4 (internal citations omitted). While not binding on this court, this case is generally supportive of the conclusion that Tennessee law does not allow a plaintiff to recover for the loss of his own household services but that he can recover the cost of paying someone else to perform those tasks.

Another even more recent case provides further support for this proposition. In multidistrict class-action litigation arising from the February 2014 recall by General Motors of vehicles that had been manufactured with a defective ignition switch, the district court for the Southern District of New York was called upon to survey the types of damages permissible in each of the forty-seven different jurisdictions involved in the multidistrict litigation. *In re General Motors LLC Ignition Switch Litigation*, 339 F. Supp. 3d 262 (S.D.N.Y. Sept. 12, 2018). Specifically at issue, among many other types of damages, was the question of whether the plaintiffs could recover "for

their 'lost time' (for example, time lost in repairing their vehicles)." *Id.* at 275. The court

interpreted this to mean lost "*free* or *personal* time," *id.* at 307, which it found is not recoverable

in most states, as distinct from lost earnings or income, which nearly every state permits.

In considering the availability of damages for the loss of "free time," the court also found

it necessary to address the related question of whether a plaintiff could recover, in each particular

jurisdiction, for the value of the loss of his or her own household services, that is, "lost-time

damages for household work." *Id.* at 321. The court explained:

> Strictly limiting compensation to lost income or earnings obviously places those
> who work in the home without pay—historically, a group disproportionately
> comprised of women—at a disadvantage. That said, perhaps mindful that
> household services can be given a pecuniary value, some states—including some
> that generally limit compensation to lost income or earnings—nevertheless
> recognize a person's right to recover for loss of time performing household labor.

*Id.* at 321. The court conducted a comprehensive survey of the laws of the forty-seven jurisdictions

that were represented in the multidistrict litigation and found that seventeen states allowed the

recovery of such damages. *Id.* at 322–23. The court then found that the other thirty jurisdictions,

Tennessee among them,[1] "prohibit a person from recovering lost-time damages for his or her *own*

unpaid household work," but allow a spouse or next of kin to bring an action to recover lost-time

damages for the work of the injured party. *Id.* at 323. While recognizing the "archaic gender

norms" in which it was rooted, the court observed that the practice "can be justified on the ground

that unpaid household work can be assigned a concrete value to others who live in that household

(namely, the cost of replacing that work with paid labor)." *Id.* at 323–24.

The court in *In re General Motors* did not pretend to do an in-depth analysis of the law in

---

[1] The court cited *Taylor v. Beard*, *supra*, in support of its conclusion that Tennessee
permitted a spouse, but not the injured plaintiff herself, to recover for the loss of household
services. *In re Gen. Motors*, 339 F. Supp. 3d at 326.

each jurisdiction, but its conclusion regarding the state of the law in Tennessee corresponds with this court's: Tennessee does not allow an injured plaintiff to recover for the loss of the value of his or her own household services.

## V. Conclusion and Order

Because Tennessee law does not permit the recovery of the type of damages the plaintiff seeks, allowing her to amend her complaint to add such a claim in this case would be futile. The categories of damages already listed in the first Amended Complaint are those that are permitted under Tennessee law. However, as also indicated above, some components of the damages the plaintiff characterizes as "household services" may be recoverable as part of her damages for pain and suffering, permanent injury, or loss of enjoyment of life. In addition, if her injuries require her to pay a third party for services she previously performed for herself, she may seek compensation for such payments as part of her economic damages. These kinds of damages fall within the categories of damages already enumerated in the Complaint.

Accordingly, plaintiff Vanessa Jackson's Motion to Amend Complaint (Doc. No. 99) to add a new category of damages is **DENIED** on the grounds of futility. Insofar as this plaintiff seeks to amend the Complaint to remove her claim for damages to compensate her for future loss of earning capacity, that portion of the motion is **GRANTED** as unopposed.

It is so **ORDERED**.

This the 8th day of May, 2019.

ALETA A. TRAUGER
United States District Judge