# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| ANGELA DWYER et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 3:16-cv-03262 |
| | ) | Judge Aleta A. Trauger |
| SOUTHWEST AIRLINES CO., | ) | |
| | ) | LEAD CASE |
| Defendant. | ) | |

***CONSOLIDATED WITH:***

| | | |
|---|---|---|
| MELISSA WARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:17-cv-00286 |
| | ) | Judge Aleta A. Trauger |
| SOUTHWEST AIRLINES CO., | ) | |
| | ) | MEMBER CASE |
| Defendant. | ) | |

***and***

| | | |
|---|---|---|
| MELISSA WARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:17-cv-00842 |
| | ) | Judge Aleta A. Trauger |
| UNITED STATES OF AMERICA, | ) | |
| | ) | MEMBER CASE |
| Defendant. | ) | |

***and***

ANGELA DWYER et al.,         )
                                )

      Plaintiffs,         )
                                )

v.                            )     Case No. 3:17-cv-01219
                                )     Judge Aleta A. Trauger

UNITED STATES OF AMERICA,    )
                                )     MEMBER CASE

      Defendant.        )

***and***

MELISSA WARD as Parent and Next Friend  )
of RONALD TILLMAN and GREYSON     )
OWENS, her minor children,      )
                                )

      Plaintiff,         )     Case No. 3:18-cv-00352
                                )     Judge Aleta A. Trauger

v.                            )
                                )     MEMBER CASE

SOUTHWEST AIRLINES CO. and     )
UNITED STATES OF AMERICA,     )
                                )

      Defendants.      )

***and***

VANESSA JACKSON,         )
                                )

      Plaintiff,         )
                                )

v.                            )     Case No. 3:18-cv-01343
                                )     Judge Aleta A. Trauger

SOUTHWEST AIRLINES CO. and     )
UNITED STATES OF AMERICA,     )     MEMBER CASE
                                )

      Defendants.      )

## **MEMORANDUM**

Before the court is the Motion for Permissive Intervention for the Limited Purpose of Revising the Protective Order to Permit Plaintiffs to Provide Discovery to MNAA, Subject to the Court's Protective Order ("Motion to Intervene") (Doc. No. 184), filed by third party Metropolitan

Nashville Airport Authority ("MNAA"). The plaintiffs in this action have signaled they do not oppose the motion,[1] but it is opposed by defendants Southwest Airlines Co. ("SWA") and the United States of America (the "United States" or the "government"). For the reasons set forth herein, the motion will be granted.

## I. PROCEDURAL BACKGROUND

This litigation originally arose out of a December 15, 2015 night-time airline accident at the Nashville International Airport when SWA's Flight 31 departed a taxiway and came to a stop in a ditch (the "Accident"). Beginning in 2016, multiple plaintiffs filed federal complaints in this court against defendants SWA (for negligent operation of the aircraft) and the United States (for negligent operation of the taxiway lights), which this court eventually consolidated for all purposes (the "Federal Litigation"). In their Answers, SWA alleged the comparative fault of the United States, and the United States alleged the comparative fault of SWA and others, including MNAA. (*See, e.g.*, Doc. No. 7, at 16; Doc. No. 46, at 20.)

On March 9, 2018, the parties to the Federal Litigation filed a Joint Motion for Entry of Parties' Stipulations and Proposed Protective Order. (Doc. No. 25.) On the same date, the court granted the motion and entered the Stipulated Protective Order ("Protective Order"), adopting the terms of the parties' Proposed Protective Order "in full as this Court's own Order." (Doc. No. 27, at 9.) The Protective Order expressly recites that, based on the parties' stipulations and factual representations, the court found that

> the exchange of sensitive information between or among the parties and/or third parties other than in accordance with the parties' Proposed Protective Order may cause unnecessary damage and injury to the parties or others [and] that the terms of the parties' Proposed Protective Order are fair and just and that good cause has been

---

[1] All plaintiffs except Vanessa Jackson have signaled their non-opposition. Plaintiff Jackson is represented by other counsel and has not responded to the motion.

shown for entry of the Proposed Protective Order governing the confidentiality of documents and/or other evidence produced in discovery, answers to interrogatories, answers to requests for admission and deposition testimony.

(Doc. No. 27, at 9.) During the course of discovery in the Federal Litigation, the parties produced information and documents in accordance with and in reliance upon the terms of the Protective Order.

On January 16, 2020, plaintiffs Lawrence Irving, Henry Maupin III, Jackson Maupin, Carrie Reed, Aaron Ritchie, Emily Traugott, and Kristel Tross and defendant SWA filed their Stipulation and [proposed] Order for Dismissal With Prejudice of Certain Plaintiffs' Claims Against Defendant Southwest Airlines Co. (Doc. No. 174.) On that same date, the court entered an Order dismissing with prejudice those plaintiffs' claims against SWA. (Doc. No. 175.)

On February 11, 2020, all of the plaintiffs involved in the Federal Litigation who brought claims against the United States filed their Stipulation and Order for Dismissal with prejudice of Plaintiffs' Claims Against Defendant United States of America (Doc. No. 176.) The court entered the proposed Order dismissing all of the plaintiffs' claims against the government with prejudice. (Doc. No. 177.)

On February 12, 2020, plaintiffs Angelina Dwyer, Roberta Pauline Maupin, Melissa Ward, Ronald Tillman, and Greyson Owens and defendant SWA filed their Stipulation and Order for Dismissal with Prejudice of Certain Plaintiffs' Claims Against Defendant Southwest Airlines Co. (Doc. No. 178.). On March 2, 2022, but "nunc pro tunc to February 12, 2020," the court entered the Order dismissing those plaintiffs' claims against SWA with prejudice. (Doc. No. 180, at 3.) Also on February 12, 2020, plaintiff Vanessa Jackson and defendant SWA entered their Stipulation and Order for Dismissal with Prejudice of Jackson's Claims against SWA. (Doc. No. 179.) The court entered the Order on March 2, 2022, "nunc pro tunc to February 12, 2020." (Doc. No. 181,

at 3.)

The entry of that Order effectively terminated the Federal Litigation, the court having dismissed with prejudice all substantive claims asserted by all of the plaintiffs against both defendants in the consolidated federal cases pursuant to the various stipulations.

## II.    THE MOTION TO INTERVENE

On March 4, 2022 MNAA filed the instant Motion to Intervene and supporting Memorandum (Doc. Nos. 184, 185), along with several exhibits (Doc. Nos. 184-1 through 184-13). MNAA represents that, basically contemporaneously with the Federal Litigation, the same plaintiffs[2] were pursuing three cases in state court against MNAA, alleging that they suffered injuries in the Accident and that the Accident resulted from MNAA's negligent installation and operation of the taxiway lights. These cases (collectively, the "State Action") were consolidated by the state court effective December 1, 2021. (Doc. No. 184-1.)[3]

In 2018, the plaintiffs in the lead state court case (prior to consolidation) filed a motion to amend their Complaint, in which they alleged that "[i]n the course of discovery" in the Federal Litigation, "further information has come to light regarding the nature of MNAA's role with respect [to the Accident]." (Doc. No. 184-2, at 2.) According to the plaintiffs there, the new information obtained in discovery in the Federal Litigation "clarifies the nature of MNAA's negligence in connection with the [Accident], including information indicating that MNAA and/or

---

[2] It appears that Vanessa Jackson is the only plaintiff in the Federal Litigation who did not also pursue claims in state court against MNAA. Accordingly, references to the "plaintiffs' herein include all of the plaintiffs in the Federal Litigation except Jackson.

[3] The three consolidated cases making up the State Action include (1) *Angela Dwyer et al. v. The Metropolitan Nashville Airport Authority*, No. 16C2326; (2) *Melissa Ward v. The Metropolitan Nashville Airport Authority*, No. 17C2378; and (3) *Melissa Ward, as parent and next friend of Ronald Tillman and Greyson Owens, v. The Metropolitan Nashville Airport Authority*, No. 19C1175. (*See* Order of Consolidation, Doc. No. 184-1.)

its employees acting within the course and scope of their employment negligently installed and maintained an unsafe, dangerous and defective . . . runway/taxiway lighting system at Nashville International Airport . . . and subsequently failed to remedy that condition . . . despite knowing it was dangerous/defective for air traffic." (*Id.*) The state judge granted the motion to amend. (Doc. No. 184-3.)

MNAA represents that, since entry of that order, "much of [MNAA's] effort" in the State Action has been devoted to trying to obtain the federal discovery to which the plaintiffs referred in their motion to amend. (Doc. No. 185, at 3.) Specifically, in August 2018, MNAA served discovery on the plaintiffs asking them, first, to "identify the factual basis, including without limitation, citation to deposition transcripts and written discovery, upon which Plaintiffs' Motion to Amend Complaint is based." (Doc. No. 184-4, at 1.) The plaintiffs objected to this request on the grounds that it sought information and documents "from discovery in Federal Court actions that are subject to a protective order."[4] (*Id.* at 2.) MNAA's request for information regarding the "factual basis . . . upon which Plaintiffs' Complaint is based" was met with the same response as were its requests for the production of "any and all deposition transcripts and other evidence taken to date" in the Federal Litigation, "any and all documents that contain the factual basis or evidence identified" in the plaintiffs' interrogatory answers, and "any and all documents that contain the factual basis or evidence that support[s] the allegations in Plaintiffs' Motion to Amend Complaint or Plaintiffs' Complaint." (*Id.* at 2–3.)

In November 2018, as its efforts to obtain discovery continued, MNAA submitted a request for documents under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, but the United

---

[4] The plaintiffs also objected on the basis that the defendant had not responded to their discovery. (Doc. No. 184-4, at 2.)

States "withheld most of the responsive documents because of" the Protective Order. (Doc. No. 185, at 3; *see also* Doc. Nos. 194-8 (FOIA Request), 184-9 (FOIA Response).) It produced only 99 pages of the 627 responsive documents it had purportedly located. MNAA appealed the FOIA Response, to no avail. (*See* Doc. No. 198, at 5 n.5; Doc. No. 198-3.)

In November 2020, MNAA moved in the state court to compel this discovery, arguing in part that much of it was not subject to the Protective Order and also pointing out that the plaintiffs themselves had filed a motion seeking additional time to pursue their claims against MNAA, in which they asserted that the Protective Order entered in the Federal Litigation "continue[d] to impact discovery and potential settlement negotiations" in the State Action. (Doc. Nos. 184-6, at 6.) The plaintiffs had also notified MNAA that both SWA and the government had refused to permit the plaintiffs to produce in the State Action any discovery covered by the Protective Order. (*Id.*)[5] The motion specifically asserted that the plaintiffs had failed to produce any discovery from the Federal Litigation, even discovery that was not marked confidential and discovery that the *plaintiffs* had designated as confidential and, therefore, under the terms of the Protective Order, had unilateral authority to produce.

Instead of ruling on the motion, the state court entered a show cause order directing SWA and the United States to show cause why the state court should not enter an order requiring the plaintiffs to produce the information sought by MNAA. (Doc. No. 184-7.) Neither SWA nor the United States responded to the show cause order. (Doc. No. 185, at 5.)

MNAA, having concluded that it had few, if any, other options, filed its Motion to

---

[5] At the same time, MNAA noted that counsel for the United States had indicated that the government's "confidentiality designations [were] limited to a discussion of [Federal Aviation Administration ("FAA")] employment files and Air Traffic Safety Action Programs." (Doc. No. 184-6, at 6.)

Intervene for the "limited purpose of revising the Protective Order to permit Plaintiffs to provide discovery to MNAA, subject to the Court's Protective Order." (Doc. No. 185, at 3.)[6] It argues that it meets the standards under Rule 24(b) for a limited permissive intervention and that, under Rule 26(c), the court has the discretion to modify the Protective Order. It also maintains that the burden of showing that the Protective Order should *not* be modified is on the party opposing modification. (*Id.* at 9.)

In their separate Responses in opposition to the Motion to Intervene (Doc. Nos. 190, 191), the defendants argue, in short, that (1) the court lacks jurisdiction to consider the motion; (2) the request to intervene is not timely; and (3) MNAA has the burden of establishing good cause for modification of the Protective Order, which it has not done.

## III.    DISCUSSION

MNAA seeks two separate and distinct forms of relief in its Motion to Intervene: (1) permissive intervention under Rule 24; and (2) modification of a protective order under Rule 26. It is well established that seeking permissive intervention and then modification of a protective order is an appropriate method for a "non-party to private litigation" to "challenge a protective order by limited intervention for discovery purposes." *Meyer Goldberg, Inc., of Lorain v. Fisher Foods, Inc.*, 823 F.2d 159, 162 (6th Cir. 1987) (citing *In re Upjohn Co. Antibiotic Cleocin Products Liab. Litig.*, 664 F.2d 114, 118 (6th Cir. 1981)); *see also Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 778 (3d Cir. 1994); *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990).

The court will first address whether MNAA should be permitted to intervene.

---

[6] MNAA also represents that a protective order similar to the Protective Order has been entered in the State Action to ensure that confidential documents produced in discovery in that proceeding will remain confidential. (*See* Doc. No. 184-13.)

### A.    Motion to Intervene

#### 1.    Legal Standard

In relevant part, Rule 24(b) provides that, "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Even if both of these requirements—timeliness and the existence of a common question[7]—are met, whether to grant permissive intervention is a question that lies within the discretion of the district court. "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(c); *Meyer Goldberg, Inc., of Lorain v. Fisher Foods, Inc.*, 823 F.2d 159, 161 (6th Cir. 1987).

#### 2.    Jurisdiction

SWA's first argument is that the court lacks jurisdiction to consider the Motion to Intervene, because the parties to the Federal Litigation have stipulated to the dismissal with prejudice of all substantive claims. (Doc. No. 190, at 7.) Indeed, the opinion on which SWA relies denied for lack of jurisdiction a motion to intervene filed following a stipulation of dismissal. The court stated, "a Rule 41(a)(1)(A)(ii) stipulation of dismissal 'terminate[s] the district court's jurisdiction except for the limited purpose of reopening and setting aside the judgment of dismissal within the scope allowed by Rule 60(b) of the Federal Rules of Civil Procedure.'" *Homesite Ins. Co. of the Midwest v. Robards*, No. 3:13-CV-515-TAV-CCS, 2014 WL 359823, at *2 (E.D. Tenn. Feb. 3, 2014) (citing *Hinsdale v. Farmers Nat. Bank & Trust Co.*, 823 F.2d 993, 995–96 (6th Cir. 1987)). Similarly, the United States argues that the court should decline to exercise supplemental

---

[7] Neither SWA nor the United States disputes the existence of common questions of law or fact.

jurisdiction over the Motion to Intervene, since all other claims over which the court had original jurisdiction have been dismissed. (Doc. No. 191, at 23 (citing *Cunningham v. Subaru of Am., Inc.*, 155 F.R.D. 205, 208 (D. Kan. 1994), *aff'd*, 54 F.3d 787 (10th Cir. 1995); 28 U.S.C. § 1367(c)(3)).

Normally, a party seeking permissive intervention under Rule 24(b) must show, as a threshold matter, an independent ground for jurisdiction. *Flynt v. Lombardi*, 782 F.3d 963, 965 (8th Cir. 2015); *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992) (citing 7C Charles A. Wright, Arthur R. Miller, Mary K. Kane, *Federal Practice and Procedure* § 1917, at 466 (2nd ed. 1986)). At the same time, courts have almost unanimously concluded that "[a]n independent jurisdictional basis is simply unnecessary when the movant seeks to intervene only for the limited purpose of obtaining access to documents covered by seal or by a protective order, because the third party does not ask the court to rule on the merits of a claim or defense." *E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1047 (D.C. Cir. 1998); *accord, e.g.*, *Comm'r v. Advance Loc. Media, LLC*, 918 F.3d 1161, 1172 n.5 (11th Cir. 2019) ("Courts retain jurisdiction to unseal judicial records and may allow parties to intervene well after judgment in a dispute."); *Beckman Indus.*, 966 F.2d at 473 ("[A]n independent jurisdictional basis is not required because intervenors do not seek to litigate a claim on the merits. The district court retained the power to modify the protective order." (collecting cases)); *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990) ("As long as a protective order remains in effect, the court that entered the order retains the power to modify it, even if the underlying suit has been dismissed."); *Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 782 (1st Cir. 1988) (noting that "courts and commentators seem unanimous in finding" that court have "inherent power" to modify their own

"discovery-related protective orders, even after judgment, when circumstances justify").[8]

While the Sixth Circuit has not expressly addressed this issue, it exercised jurisdiction in *Meyer Goldberg*, without discussion, over the appeal of the denial of a motion to intervene for the purpose of modifying a protective order in a case that had been "settled and dismissed." *Meyer Goldberg*, 823 F.2d at 161. This court finds that it retains jurisdiction to permit intervention for the limited purpose of modifying a protective order that remains in effect. For the same reason, declining to exercise supplemental jurisdiction would not be appropriate.

         3.    *Timeliness*

Determining whether a motion to intervene is timely involves the consideration of such factors as:

> (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenor knew or reasonably should have known of his interest in the case; (4) the prejudice to the original parties due to the proposed intervenor's failure, after he or she knew or reasonably should have known of his interest in the case, to apply promptly for intervention; and (5) the existence of unusual circumstances militating against or in favor of intervention.

*United States v. Tennessee*, 260 F.3d 587, 592 (6th Cir. 2001) (quoting *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989)). "No one factor is dispositive, but rather the 'determination of whether a motion to intervene is timely should be evaluated in the context of all relevant circumstances.'" *Blount-Hill v. Zelman*, 636 F.3d 278, 284 (6th Cir. 2011) (quoting *Stupak-Thrall v. Glickman*, 226 F.3d 467, 472-73 (6th Cir. 2000)).

---

[8] *But see Bond v. Utreras*, 585 F.3d 1061, 1078–79 (7th Cir. 2009) (finding that a would-be intervenor lacked standing to challenge a protective order in a dismissed case and, alternatively, that the district court did not have inherent power to modify or revoke the protective order post-judgment), *disagreed with in part by Davis v. Lifetime Capital, Inc.*, 560 F. App'x 477, 488 (6th Cir. 2014).

Most courts to consider the question, however, have recognized that, when a non-party seeks permissive intervention for the limited purpose of modifying a protective order after a case has been dismissed, the point to which suit has progressed is of minimal importance. The purpose of Rule 24(b)'s timeliness requirement is to "prevent prejudice in the adjudication of the rights of the existing parties," and this concern is "not present when the existing parties have settled their dispute and intervention is for a collateral purpose." *United Nuclear Corp.*, 905 F.2d at 1427 (citing *Pub. Citizen*, 858 F.2d at 786–87; *Meyer Goldberg*, 823 F.2d at 161–62)). Thus, when intervention is sought for the limited purpose of modifying a protective order, the requirement of timeliness is "quite broad." *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 255 F.R.D. 308, 315 (D. Conn. 2009); *see also E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1047 (D.C. Cir. 1998) (vacating a district court's denial of permissive intervention and finding a motion filed almost two years after the case had settled to be timely); *Boca Raton Cmty. Hosp., Inc. v. Tenet Healthcare Corp.*, 271 F.R.D. 530, 535 (S.D. Fla. 2010) (finding timely a motion to intervene filed three years after settlement and dismissal of the underlying case).

In *Public Citizen*, the Tenth Circuit also noted that potential prejudice that parties might suffer from opening the record "should not undermine the timeliness" of a motion to intervene. *Pub. Citizen*, 858 F.2d at 787. Rather, the potential burden on existing parties resulting from the modification of a protective order "should affect not the right to intervene but, rather, the court's evaluation of the merits of the applicant's motion to lift the protective order." *Id.* In other words, the question of prejudice at this stage is the prejudice caused by intervention itself. Where, as here, the case is closed, intervention will have no real impact on the underlying litigation itself or cause any delay in its progression.

Based on these principles, the court finds the defendants' arguments that the proposed intervention is untimely to be unpersuasive. Both SWA and the United States argue that the fact that this case has been settled and closed and that more than five years have passed since the inception of the federal and state lawsuits together "provide[] the strongest possible support for [SWA's] opposition to MNAA's motion." (Doc. No. 190, at 8; *see also* Doc. No. 191, at 19 (arguing that the length of time that has passed since MNAA learned of its interest in the Federal Litigation "largely speaks for itself and weighs against granting MNAA's motion").) But neither defendant actually explains why this should be so, given that the requested intervention would not affect their substantive rights in the underlying litigation or cause any delay in the resolution of that litigation. The government argues that MNAA should have learned early on of its "non-party contributory fault defense" and its need for "damages discovery taken in the federal matter, since Plaintiffs complained of identical injuries in the state litigation." (Doc. No. 191, at 19.) The government asserts that MNAA could have intervened early on in the Federal Litigation but, instead, chose to "hang[] back and let[] the federal parties do all the expensive discovery work." (*Id.* at 20.) It also argues that MNAA's tactic of "[w]aiting to see what discovery may reveal in Federal Litigation before seeking to intervene is a disfavored strategy." (*Id.* (citing *Empire Blue Cross & Blue Shield v. Janet Greeson's A Place For Us, Inc.*, 62 F.3d 1217 (9th Cir. 1995)).)

Even if MNAA knew or should have known of its interest sooner, the court does not find such knowledge fatal to the timeliness of its present motion, nor does the record support the United States' claim that MNAA "hung back" and waited to see what would happen in the Federal Litigation before seeking to obtain discovery exchanged in this case. Notably, the defendants appear to argue that MNAA's motion is *both* unduly delayed and premature, insofar as MNAA should have pursued other avenues for obtaining the requested documents before seeking

intervention. However, MNAA has shown that it has tried several other routes, essentially unsuccessfully.[9]

Moreover, the cases cited by the defendants as finding motions to intervene untimely typically concern situations in which substantive intervention is sought, rather than intervention solely for the purpose of modifying a protective order, *see, e.g.*, *Bay Mills Indian Cmty. v. Snyder*, 720 F. App'x 754, 758 (6th Cir. 2018) (intervention sought five years after initiation of case untimely), or in which the protective order was entered as *part of* the settlement, *see, e.g.*, *Empire Blue Cross*, 62 F.3d at 1219.

Most of the defendants' other arguments have to do with potential prejudice that may ensue from permitting modification of the protective order, a completely separate inquiry, which the court declines to consider in the context of the timeliness of the Motion to Intervene.

The court finds, in short, that the Motion to Intervene is not untimely.

### 4. *Prejudice*

Under Rule 24(b)(3), the court must balance the interests of all parties to determine whether intervention would "unduly delay or prejudice the adjudication of the rights of the original parties." As referenced above, SWA and the United States, in opposing MNAA's motion, devote most of their briefs to opposing modification of the Protective Order, while glossing over the fact that modification is a separate inquiry from the threshold decision of whether to grant intervention. *Accord Pub. Citizen*, 858 F.2d at 787; *Boca Raton Cmty. Hosp., Inc. v. Tenet Healthcare Corp.*, 271 F.R.D. 530, 536 (S.D. Fla. 2010); *In re EPDM Antitrust Litig.*, 255 F.R.D. at 317.

---

[9] The record is unclear as to whether MNAA has pressed for a ruling on its motion to compel *non-confidential* discovery documents from the plaintiffs in the State Action. It does establish that it pursued a FOIA request and an appeal of the partial denial of that request, and it has sought to obtain deposition transcripts directly from the court reporters who transcribed them. (*See* Doc. No. 198, at 5 & n.5; Doc. Nos. 198-1, 198-2.)

Because MNAA has met the threshold criteria for a permissive intervention and the defendants have not shown that any undue delay or prejudice to the adjudication of their rights in the Federal Litigation would result, MNAA will be permitted to intervene in this suit. Whether it will be permitted to modify the Protective Order, and to what extent, is a separate issue, discussed below.

**B.    Motion to Modify Protective Order**

*1.    Legal Standards*

"Clearly, the power of a district judge includes the power to modify a protective order." *In re Upjohn Co.*, 664 F.2d at 118 (6th Cir. 1981); *see also Pub. Citizen*, 858 F.2d at 782 ("We note that the courts and commentators seem unanimous in finding such an inherent power to modify discovery-related protective orders, even after judgment, when circumstances justify."). The decision to grant or deny a motion to modify a protective order, like the decision whether to grant permissive intervention, is within the discretion of the trial court. *Meyer Goldberg*, 823 F.3d at 161.

The defendants argue that "the party moving for modification of a protective order [must] establish good cause for doing so." *See CMC Telecom, Inc. v. Mich. Bell Tel. Co.*, No. 1:07-CV-319, 2012 WL 13185449, at *2 (W.D. Mich. Apr. 18, 2012) (collecting cases); *see, e.g.*, *Murata Mfg. Co., Ltd. v. Bel Fuse, Inc.*, 234 F.R.D. 175, 179 (N.D. Ill. 2006) ("It should be no surprise that, there having been good cause to enter the protective order in the first place, there must be good cause shown before it can be vacated." (collecting cases)). In *CMC Telecom*, the plaintiff, relying on *Meyer Goldberg*, argued that it did not need to establish good cause to modify a protective order. The district court was not persuaded, noting in particular that, when *Meyer Goldberg* was issued, Rule 5(d) of the Federal Rules of Civil Procedure still required that discovery

materials be filed with the court. Fed. R. Civ. P. 5 advisory committee's note to 2000 amend. However, effective December 1, 2000, Rule 5(d) was amended to provide that discovery need not be filed unless it is used in the proceedings. Fed. R. Civ. P. 5(d). The court noted in *CMC Telecom* that, following the amendment, there is no statutory right of access to discovery documents exchanged between private parties to litigation.[10]

*CMC Telecom*'s conclusion that the burden of proof should generally be placed on the party seeking modification of the protective order is substantiated by a recent Sixth Circuit opinion holding, specifically in the context of an intervenor's request to modify a "blanket" stipulated protective order, that "the burden of proof will remain with the party seeking protection"—that is, the party opposing modification. *In re Nat'l Prescription Opiate Litig.*, 927 F.3d 919, 930 (6th Cir. 2019) (quoting *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 n.1 (9th Cir. 2002)).

The parties dispute whether that holding applies in this case. The defendants argue that it does not, as the parties carefully described in their Stipulations and Proposed Protective Order the specific categories of information that could be deemed confidential and the means by which material would be designated as confidential, and the court, in entering the Protective Order, expressly found that the "terms of the parties' Proposed Protective Order are fair and just" and that "good cause has been shown for entry" of the order. (*See* Doc. No. 27, at 9.) MNAA argues that *In re National Prescription Opiate Litigation* does apply here, as the Protective Order is precisely the type of "blanket" protective order to which the Sixth Circuit was referring, and that this court

---

[10] Unfortunately, many of the appellate court opinions involving requests for permissive intervention for the purpose of modifying a protective order concerning discovery documents predate 2000, which somewhat undermines their persuasive authority, in light of the fact that the sealing of actual court records is no longer at issue in that context.

simply adopted the "good cause" language set forth in the parties' proposed Order without making its own findings. (*See* Doc. No. 198, at 6 ("[S]uch a reading of *In re [National] Prescription Opiate Litigation* . . . would eviscerate its holding because parties would always include 'good cause' language in their proposed protective orders.").) It also argues that, regardless of who bears the burden, good cause is on its side.

The court finds that the Protective Order in this case is not a "blanket" protective order in the sense that the parties pre-designated *all* discovery as subject to protection. *See, e.g.*, *United Nuclear Corp.*, 905 F.2d at 1427 (defining a "blanket" protective order as one that "designated all materials produced in discovery as confidential" and "restricted use and disclosure unless a party challenged the confidentiality of a particular item"). And the court also finds that the relatively narrowly defined scope of documents that could be designated as "confidential" under the terms of the Protective Order and the court's own finding—regardless of whether the Order was drafted by the parties—that good cause existed to enter the Protective Order remove this case from the scope of the holding in *In re National Prescription Opiate Litigation*. As a result, MNAA bears the burden of establishing good cause for modification of the Protective Order.

### 2. *Alleged Prejudice to the Defendants*

In the context of disputing the timeliness of MNAA's motion, SWA argues that MNAA does not simply want to "intervene in order to obtain discovery materials; it wants to rewrite numerous provisions of the [Stipulated] Protective Order to allow MNAA to do things currently prohibited by the Order." (Doc. No. 190, at 8–9.) It contends that it would be prejudiced by permitting modification of the Protective Order because, being a Texas corporation, it is beyond MNAA's subpoena power under Texas law, and this court should not permit MNAA to "use this Court as an instrumentality to undercut Texas public policy against allowing Texas residents to be

subject to foreign demands for documents."[11] (*Id.* at 9.) It also asserts that, in accordance with the terms of the Protective Order itself, it has requested that the plaintiffs return to it the documents it designated as confidential, but MNAA wants the plaintiffs to be permitted to keep (and disclose to MNAA) those documents.

The only other forms of prejudice SWA identifies are (1) the expense it will be required to incur in "defending a closed litigation file," while MNAA has "not made a full attempt to obtain the documents it seeks by means less prejudicial to Southwest than intervening in this case for the purpose of re-writing an Agreed Protective Order in a fully resolved case" (*id.* at 11); and (2) that, if MNAA is permitted to "rewrite" the Protective Order, SWA will no longer have any control over its confidential materials (*id.* at 12). SWA further maintains that MNAA has not made any attempt to verify which of SWA's non-confidential materials it has (or should have) been able to obtain in discovery in the State Action or to explain why it has a compelling need for SWA's confidential materials. SWA also maintains that MNAA cannot point to any other cases permitting intervention under similar circumstances for similar purposes. It asserts that, under all of these circumstances, MNAA has not established good cause for modification of the Protective Order.

Similarly, the United States argues that, if the court grants MNAA's motion and permits the plaintiffs to disclose confidential documents "subject to the terms of the protective order in the state litigation," the government will be required to "monitor whether the parties to the state litigation comply with the terms" of the Protective Order entered in this case. (*Id.* at 21.) It asserts that merely making MNAA subject to the terms of the Protective Order would provide little assurance of continued confidentiality, in light of the broader terms of disclosure to which MNAA

---

[11] MNAA refutes this, asserting that it can serve SWA's registered agent in Tennessee, and argues that, while it may still pursue that route, there are many reasons why going through that process would have multiplied the litigation costs for everyone involved. (Doc. No. 198, at 5 n.6.)

and the plaintiffs agreed in the protective order entered in the State Action, and that, from a pragmatic standpoint, the government would still be "forced to somehow participate" in the State Action discovery process to ensure protection of its confidential documents and adherence to this court's order. (*Id.* at 22.) It claims that thus forcing it to "expend resources to protect its interest in the Federal Litigation discovery will essentially deny Defendant United States the peace it purchased from Plaintiffs by settling the federal cases" (*Id.*)

The government, like SWA, also argues that a significant quantity of non-confidential documents should have already been made available to MNAA by the plaintiffs, including expert discovery materials and information pertaining to the plaintiffs' own damages, such as their medical, employment, and financial records. The government contends that MNAA has never obtained a ruling in the State Action on its motion to compel those documents, has "apparently also decided against paying the court reporters for the non-confidential transcripts they worked on in the federal cases," and "chose not to exercise its FOIA appeal rights." (*Id.* at 22–23.) That is, the government argues, "the existence of many other means for obtaining discovery to enable MNAA to mount a defense . . . highlights the fact that the instant motion is simply unnecessary." (*Id.* at 23.)

### 3.     *MNAA's Showing of Good Cause*

As set forth above, MNAA refutes the defendants' assertions that it never pursued an appeal of its FOIA request or other means within its power to obtain the documents it seeks here. It asserts that it has good cause for seeking to modify the Protective Order to obtain documents from the plaintiffs, because the plaintiffs "chose" to leave MNAA out of the Federal Litigation and sued it in state court instead, "forc[ing] [MNAA] to go to trial without receiving any of the discovery in the federal case even though exactly the same issues exist," and that it "needs the

discovery material to adequately defendant against Plaintiffs' lawsuit in state court." (Doc. No. 185, at 10 & n.6.)

    4.    *Balancing of the Equities*

MNAA states that it is asking the court to "become part of the parties' stipulated Protective Order." (Doc. No. 185, at 10.) It also asserts that thus modifying the Protective Order would not cause any prejudice to the defendants, because there would be no potential for public disclosure of the confidential information. (*Id.* (citing *United Nuclear*, 905 F.2d at 1428 ("As the district court recognized, any legitimate interest the defendants have in continued secrecy as against the public at large can be accommodated by placing Intervenors under the restrictions on use and disclosure contained in the original protective order."); *Robb v. Ishee*, No. 2:02-CV-535, 2017 WL 2730615, at *6 (S.D. Ohio June 26, 2017), at *6 (granting motion to intervene for purposes of discovery where the court was satisfied that the defendant's "legitimate secrecy interest" could be protected by subjecting the intervenor to the terms of the parties' protective order).)

MNAA does not address several of the points the defendants have raised. In particular, SWA represents that it has requested that the plaintiffs return to it the confidential materials it produced in discovery, which SWA has the prerogative to do under the terms of the existing Protective Order. (*See* Doc. No. 27, at 8.) It is unclear when it made this request or whether the plaintiffs have complied with it. To the extent the plaintiffs have already complied with that request, modification of the Protective Order would have no effect on the plaintiffs' ability to produce the documents, and the court will not go so far as to require SWA to produce documents directly to MNAA. Such an action, in any event, would be outside the scope of the court's jurisdiction in this closed case. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377

(1994) (unless stated otherwise in a stipulation of dismissal under Rule 41(a)(1)(A)(ii), a court may be stripped of jurisdiction over a dispute).

In addition, MNAA has not clearly explained why it has a blanket need for *all* confidential discovery produced in this matter by SWA and the United States or, indeed, why it has not further pressed the plaintiffs for discovery that is *not* covered by the Protective Order. According to the United States, much of the material that would be responsive to MNAA's requests was never designated as confidential. Moreover, it is not entirely clear why MNAA is seeking material on which the *plaintiffs* will need to rely in order to prove their claims against MNAA. It would make more sense for the plaintiffs, who have the burden of proof, to seek permission to produce the material that, they claim, establishes MNAA's negligence. For whatever reason, however, they have not done so.

Further, while MNAA states in its Memorandum that it seeks to "become part of the parties' stipulated Protective Order" (Doc. No. 185, at 10), what it actually requests in its Motion to Intervene (Doc. No. 184) is that the Protective Order be modified to permit the plaintiffs to provide discovery sought by MNAA in the State Action. The distinction may seem subtle, but the court finds it important, as it does not appear to be within the court's authority to actually make MNAA a party to the Protective Order.

The court nonetheless finds that MNAA has established a need for the discovery. The plaintiffs responded to MNAA's discovery requests with a blanket objection that they were prohibited from producing responsive documents (or referencing them) by the terms of the Protective Order. Moreover, there is no reason why the defendants' legitimate interests in the continued secrecy of their confidential materials with respect to the public at large cannot be "accommodated by placing [MNAA] under the restrictions on use and disclosure contained in the

original protective order." *United Nuclear*, 905 F.2d at 1428; *see also Boca Raton Hosp.*, 271 F.R.D. at 537 ("Any fear that [the defendants] may have over the further dissemination of [their] confidential documents is easily remedied by making [MNAA] subject to the terms of the existing . . . protective order." (footnote and citation omitted)).

Further, there is also no obvious reason why granting MNAA access to the discovery, subject to the terms of the Protective Order, would cause the defendants to incur any significant additional expense. Insofar as they claim an ongoing need to "monitor" their confidential documents that might be released to MNAA, the court accepts that MNAA's counsel, as officers of the court, will at all times abide strictly by the terms of the Protective Order, thus minimizing the defendants' need to provide oversight. *Accord Robb*, 2017 WL 2730615, at *6.

The court finds, in sum, that MNAA has established good cause for modification of the Protective Order, and granting such modification would not give rise to a substantial risk of prejudice or harm to the defendants' legitimate interests in the continued privacy of the confidential material produced in discovery in the Federal Litigation. The court, therefore, will exercise its discretion to modify the Protective Order.

## IV.    CONCLUSION

For the reasons set forth herein, the court will grant MNAA's Motion for Permissive Intervention for the Limited Purpose of Revising the Protective Order to Permit Plaintiffs to Provide Discovery to MNAA, Subject to the Court's Protective Order (Doc. No. 184). The Protective Order will be modified solely for the purpose of allowing the plaintiffs to provide to MNAA in the State Action documents designated as confidential that were produced by SWA and the United States in discovery in the Federal Litigation and allowing plaintiffs to remain in possession of the defendants' confidential documents for the duration of the State Action. All other

terms of the Protective Order will remain in effect, and MNAA will be subject to those terms.

To be sure, modification of the Protective Order will have no effect on the plaintiffs' ability to produce in the State Action materials produced in discovery in the Federal Litigation that were not designated by any party as "confidential," nor have the plaintiffs ever been barred by the Protective Order from granting MNAA access to documents that the plaintiffs themselves had designated "confidential." MNAA should be able to obtain copies of deposition transcripts not designated as confidential either directly from the court reporters (upon payment of any necessary fees) or from the plaintiffs, irrespective of this ruling.

It is so **ORDERED**.

_____
ALETA A. TRAUGER
United States District Judge